IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Peparlet Co., Ltd. et al., | Case No. 3:12 CV 492 |
| Plaintiffs, | MEMORANDUM OPINION AND ORDER |
| -vs- | JUDGE JACK ZOUHARY |
| Shepherd Specialty Papers, Inc., | |
| Defendant. | |

### INTRODUCTION

Pending before this Court is Plaintiffs' Motion for Partial Summary Judgment. The matter has been fully briefed (Docs. 35, 39–40). This Court held oral argument on May 14, 2013 (Doc. 41). Plaintiffs allege in their Motion that Defendant Shepherd Specialty Papers, Inc. ("Shepherd") is contractually estopped from asserting Count II of the Counterclaim, as well as Item (f) of the requested relief, both which relate to the 676 patent.

### BACKGROUND

Plaintiffs Peparlet and The Anderson's filed a two-count First Amended Complaint (Doc. 23) bringing claims related to two different patents -- "the 576 patent" and "the 676 patent." Plaintiffs' pending Motion for Partial Summary Judgment (Doc. 35) concerns only the 676 patent, as only the 676 patent was the subject of a 2010 Settlement Agreement entered into by the parties in connection with a previously filed case in this Court (Case No. 10 CV 1056). Plaintiffs' Amended Complaint alleges Shepherd breached the Settlement Agreement with respect to the 676 patent by not complying

with Paragraph 5 of the Settlement Agreement, which provides that "Shepherd . . . will not infringe any claim of the 676 Patent." Plaintiffs contend Shepherd has violated this provision by selling certain products.

In response to Plaintiffs' Amended Complaint, Shepherd filed an Answer and Counterclaim (Doc. 24), requesting in Count II of its Counterclaim that this Court enter declaratory judgment finding the 676 patent invalid.

Plaintiffs filed a Motion for Partial Summary Judgment with respect to Count II of the Counterclaim. Plaintiffs argue Shepherd is contractually barred from asserting this Counterclaim by virtue of the 2010 Settlement Agreement which provides:

> [¶ 3] Shepherd agrees not to challenge, now or in the future, the validity or enforceability of the '676 patent.

## **ANALYSIS**

In *Flex-Foot, Inc. v. CRP, Inc.*, 238 F.3d 1362 (Fed. Cir. 2001), the Federal Circuit held that a provision of a settlement agreement with language similar to that in Paragraph 3 of the 2010 Settlement Agreement estopped the accused infringer from challenging the validity of the patent in suit in any subsequent action. During the first case, after discovery and the filing of a motion for summary judgment of invalidity, the parties settled the case and entered into a settlement agreement and a corresponding license agreement. The settlement agreement contained the following language pertinent to subsequent invalidity challenges:

> 7.1 [Springlite] agrees not to challenge or cause to be challenged, directly or indirectly, the validity or enforceability of the 913 patent and/or the 363 patent in any court or other tribunal, including the United States Patent and Trademark Office. As to the 363 and 913 patents only, [Springlite] waives any and all invalidity and unenforceability defenses in any future litigation, arbitration, or other proceeding. This waiver applies to any product made, used, or sold by [Springlite] or any of their assignees, successors or those who act for or in concert with any of them at any time during the life of either the 363 or 913 patents. *Id.* at 1364.

2

Subsequently, Flex-Foot sued Springlite for infringement of the 363 patent, and the case was submitted to arbitration pursuant to the most recent settlement agreement. The arbitrators found that the device infringed and issued an award in favor of Flex-Foot. Springlite moved to vacate the award, arguing the district court should consider its invalidity argument. The district court denied the motion on the ground that Springlite was collaterally estopped from challenging the validity of the 363 patent. The Federal Circuit held that the district court was correct to conclude that Springlite was estopped, albeit on the basis of contractual estoppel arising from the dismissal with prejudice of the 1993 case and the related settlement agreement.

The court reasoned that such a result strikes an appropriate balance between the competing policies of permitting full and free competition in the use of ideas in the public domain and encouraging settlement of patent litigation. *Id.* at 1368–69. Summarizing its holding, the court stated:

> Once an accused infringer has challenged patent validity, has had an opportunity to conduct discovery on validity issues, and has elected to voluntarily dismiss the litigation with prejudice under a settlement agreement containing a clear and unambiguous undertaking not to challenge validity and/or enforceability of the patent in suit, the accused infringer is contractually estopped from raising any such challenge in any subsequent proceeding. *Id.* at 1370.

More recently, the Federal Circuit explained that *Flex-Foot*'s contractual estoppel doctrine does not require that invalidity issues were actually litigated in the proceeding giving rise to the settlement agreement. *Baseload Energy, Inc. v. Roberts*, 619 F.3d 1357, 1363 (Fed. Cir. 2010). The court said that while the absence of ligation of invalidity issues may be pertinent to whether a party waived future challenges to invalidity, the critical requirement for contractual estoppel is "clear and unambiguous language barring the right to challenge patent validity in future infringement actions . . . even if invalidity claims had not been previously at issue and had not been actually litigated." *Id.* In *Baseload*, the Federal Circuit found the settlement agreement at issue did not preclude a subsequent

3

validity challenge because the language of the settlement agreement was not clear and unambiguous. *Id.*

A recent opinion in *Petter Investments, Inc. v. Hydro Engineering, Inc.*, 828 F. Supp. 2d 924 (W.D. Mich. 2011), is helpful. In that case, Petter and Hydro entered into a settlement agreement which contained the following provision:

> Neither Petter nor its attorneys shall take any action to aid, induce, assign, or participate in, directly or indirectly any action contesting the validity or enforceability of any of the Hydro patents in suit (U.S. Patents Nos. 6,799,591 and 7,258,749) in any court or other tribunal including without limitation any litigation, declaratory judgment action, or requesting the U.S. Patent and Trademark Office ("PTO") for the reexamination or cancellation of any of Hydro's patents in suit. *Id.* at 926.

Petter later filed a complaint for declaratory judgment, asking the court to declare the 591 and 749 patents invalid. This Court discussed and analyzed the Federal Circuit's holdings in *Flex-Foot* and *Baseload*, and found that the provision of the settlement agreement between the parties "set[] forth in clear and unambiguous terms Petter's agreement not to contest the validity or enforceability of the 591 and 749 patents at issue." *Id.* at 927.

### *Enforceability of the Settlement Agreement's No Challenge Clause*

Here, the language of Paragraph 3 of the 2010 Settlement Agreement is clear and unambiguous that the objective of the provision is to preclude a future attack by Shepherd on the validity of the 676 patent. The 2010 litigation involved the same parties to this action and the same patent. To resolve that litigation, Shepherd voluntarily entered into the settlement terms.

Shepherd argues enforcing this provision of the Settlement Agreement is against public policy. However, as discussed above, cases suggest the contrary. Plaintiffs argue that because the 2010 litigation settled early on (before much discovery occurred), and because the 2010 litigation was dismissed without prejudice, *Flex-Foot* and *Baseload* are not applicable here. However, this is too

4

narrow a reading of those cases. Plaintiffs are correct: the key problem with Shepherd's theory is that if discovery were mandated in order for a settlement agreement to be valid, no case would ever be really and truly resolved until after extensive (and expensive) discovery, and the court in *Flex-Foot* noted that "[u]pholding the terms of settlement agreements encourages patent owners to agree to settlements and promotes judicial economy." 238 F.3d at 1370. Further, *Flex-Foot* only required litigation to be initiated, thereby providing an opportunity for the challenger to conduct discovery on validity issues. *Id.* Shepherd could have conducted discovery in the prior litigation if it had so desired, but it chose to forego discovery and settle the case at an early stage.

### *Extrinsic Evidence*

Shepherd's suggestion that this Court consider extrinsic evidence is not well taken. The no-challenge clause in the Settlement Agreement is both clear and unambiguous. Further, the Settlement Agreement contains a merger clause.

### *Shepherd's Argument that Plaintiffs Breached First*

Shepherd further contends Plaintiffs' own breach of the Settlement Agreement precludes Plaintiffs from raising the Settlement Agreement as a bar to Shepherd's invalidity claim. It's unclear how Plaintiffs' claim against Shepherd breaches the Settlement Agreement which bars Shepherd from continuing to violate the patent by selling certain products. Under this scenario, it is Shepherd who allegedly breached first.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Partial Summary Judgment is granted. Shepherd is contractually estopped from asserting Count II of its Counterclaim, as well as Item (f) of its requested relief relating to the 676 patent.

IT IS SO ORDERED.

                                                   s/ *Jack Zouhary*
                                                  JACK ZOUHARY
                                                  U. S. DISTRICT JUDGE

                                                  May 16, 2013